UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 23-263 |
| CHRISTOPHER DOWNING<br>IRIS LEWIS | SECTION "O" |

## ORDER AND REASONS

Before the Court is the motion[1] of Defendants Christopher Downing and Iris Lewis to suppress evidence seized during a search warrant at 3916 Delachaise Street, New Orleans, on grounds that the search violated Defendants' Fourth Amendment rights.[2] In support of their motion, Defendants claim (1) the warrant affidavit contained material misrepresentations and omissions, made knowingly or with reckless disregard for the truth, without which the affidavit fails to show probable cause, and (2) the affidavit was "bare bones," lacking in indicia of probable cause, and not redeemed by the *Leon* good-faith exception. Neither claim persuades. For the

---

[1] ECF No. 69.

[2] Prior to filing the instant motion, Defendant Downing filed motions *pro se* seeking to suppress evidence and to invoke his speedy trial rights. ECF Nos. 42, 43. Downing was represented by counsel at the time. Upon receiving the motions, the Court instructed Downing's counsel to "file, as he deems appropriate, a motion amending or supplementing Defendant's *pro se* claims." ECF No. 44. The instant motion followed. ECF No. 69.

The Court need not separately address Downing's *pro se* motions because the arguments raised therein, liberally construed, are to a large degree covered by the instant motion. To the extent the *pro se* motions raise alternative claims, the Court finds those claims meritless. The Court otherwise disregards Downing's *pro se* motions. "When a defendant is represented by counsel, he or she does not have the right to file *pro se* motions." *United States v. Jones*, 842 F. App'x 878, 883 (5th Cir. 2021) (unpublished). Because "there is no constitutional right to hybrid representation," *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996), the Court exercises its discretion not to consider Downing's *pro se* motions. *See Jones*, 842 F. App'x at 883.

1

following reasons, the Court orders that Defendants' motion to suppress is **DENIED**.

I. **BACKGROUND**

On August 31, 2022, the New Orleans Police Department (NOPD) executed a search warrant at a residence located at 3916 Delachaise Street, where it recovered drug evidence implicating Downing and Lewis.[3] The affidavit supporting the search warrant described how Downing was the suspect in an armed robbery of a convenience store on August 8, 2022.[4] The language of the affidavit is at the heart of Defendants' motion to suppress.

The affidavit described the perpetrator of the robbery as a "black male wearing blue surgical gloves, gray hooded sweatshirt, black pants, and a black mask."[5] After robbing the convenience store at gunpoint of almost $5,000, according to the affidavit, the perpetrator fled on foot towards a parked car and drove away.[6] Detective Herman, who investigated the scene and later authored the affidavit, described finding an iPhone on the perpetrator's flight path.[7] Based on the location of the phone, the "small amount of time between the perpetrator fleeing and the Detective locating the cell phone," and surveillance footage showing the perpetrator talking on a phone moments before the robbery, Detective Herman believed the recovered phone belonged to the perpetrator of the robbery.[8]

---

[3] ECF No. 72-1 at 7.
[4] *Id.* at 1–4.
[5] *Id.* at 1.
[6] *Id.* at 2.
[7] *Id.*
[8] *Id.*

2

The affidavit stated that Detective Herman secured a search warrant for the phone.[9] NOPD determined that the phone was subscribed to Lewis, but "various text chats, Instagram chats, and pictures on the phone" pointed to Downing as the phone's day-to-day user.[10] According to the affidavit, the cell phone records included a photo of Downing posing with a vehicle matching the robbery getaway car, a gray Honda Accord.[11] The car in the photo was registered to Lewis.[12] Moreover, based on "text messages and photos retrieved from the phone," NOPD determined that Lewis was "in a romantic relationship, lived together and shared children" with Downing.[13]

The affidavit then described other cell phone photos linking Downing to the robbery, including photos showing "Downing wearing the same boots as the perpetrator as seen on surveillance video captured the night of the robbery"; "the sweatshirt worn by the perpetrator of the robbery with distinctive markings on the cuff, hanging over the door behind Mr. Downing"; and "Mr. Downing wearing a ski mask type face covering, the same as the perpetrator of the robbery."[14]

Based on these facts, NOPD secured an arrest warrant for Downing.[15] The search warrant affidavit states that "[s]urveillance detectives were able to locate Mr. Downing at 3916 Delachaise Street," where they observed Downing "entering and exiting the location . . . and sitting on the porch smoking."[16] Officers arrested Downing

---

[9] *Id.*
[10] *Id.*
[11] *Id.* at 3.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

3

at 3916 Delachaise Street, at which time NOPD sought and obtained the search warrant at issue here.[17]

Based on the search warrant affidavit, Judge Robert Blackburn, Orleans Parish Criminal District Court, concluded that NOPD had "good reason to believe" certain property was concealed at the residence, including:

> Articles of clothing worn during the robbery, firearms, firearm ammunition, firearm accessories, firearm receipts, papers or personal effects of evidentiary value related to Mr. Downing, additional cell phones which may contain digital evidence, or any other illegal contraband located therein.[18]

In executing the warrant on August 31, 2022, officers seized drug evidence and two cell phones, but no clothing or firearms pertaining to the robbery.[19]

Defendants were subsequently charged in a three-count indictment.[20] Count One charges that on or about August 8, 2022, Downing interfered with commerce through robbery ("Hobbs Act Robbery"), in violation of 18 U.S.C. § 1951.[21] Count Two charges that on or about August 8, 2022, Downing possessed and brandished a firearm in furtherance of and during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).[22] Count Three charges that on or about August 31, 2022, Downing and Lewis possessed with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A).[23]

---

[17] *Id.*
[18] *Id.* at 5–6.
[19] *Id.* at 7.
[20] ECF No. 1.
[21] *Id.*
[22] *Id.*
[23] *Id.*

Defendants are pending trial, but now move to suppress the evidence seized from 3916 Delachaise Street based on alleged fatal deficiencies in the search warrant affidavit.[24]

## II.     LEGAL STANDARD

The Fourth Amendment protects individuals from "unreasonable searches," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. It is axiomatic that "[a] valid search warrant may be issued only upon a finding of probable cause." *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). "The information necessary to show probable cause must be contained within a written affidavit given under oath," and "[t]he affidavits must supply the magistrate with sufficient information to determine that probable cause exists." *Id.* at 1302–03.

"Probable cause exists when under the 'totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause is "something more than mere suspicion. Probable cause requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004)

---

[24] ECF No. 69.

5

(quoting *United States v. Gordon*, 580 F.2d 827, 832–33 (5th Cir. 1978)) (internal quotation marks omitted).

In general, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule. *United States v. Calandra*, 414 U.S. 338, 347–48 (1974). In considering whether to apply the exclusionary rule, a district court engages in a two-part inquiry: the court must first determine whether the good-faith exception to the exclusionary rule applies, and then determine whether the warrant was supported by probable cause. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993) (citing *United States v. Leon*, 468 U.S. 897 (1984)). "Principles of judicial restraint and precedent dictate that, in most cases, [the court] should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter." *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988).

"Under the good faith exception, evidence obtained during execution of a warrant later determined to be deficient is nonetheless admissible if the executing officer's reliance on the warrant was objectively reasonable and made in good faith." *United States v. Woerner*, 709 F.3d 527, 533 (5th Cir. 2013). This is because "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922. It is for these reasons that suppression of evidence "has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Courts often cite four specific circumstances under which the good-faith exception does not apply: (1) when the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the issuing judge wholly abandoned his judicial role; (3) when the warrant was based on an affidavit that is "bare bones," that is, so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. *See United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) (citations and quotations omitted). In the motion before the Court, Defendants argue that two of these circumstances, (1) and (3), are applicable in the instant case.

To suppress evidence on Fourth Amendment grounds, Defendants have the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of their Fourth Amendment rights. *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018).

### III. ANALYSIS

Defendants argue that the search warrant at 3916 Delachaise Street was unlawful and the seized evidence must be suppressed.[25] Defendants contend that the good-faith exception to the warrant requirement does not apply because, first, the warrant affidavit "was corrupted by intentional misrepresentations and omissions,"

---

[25] ECF No. 69-1 at 1.

7

and second, the affidavit "was otherwise 'bare bones' thus lacking in probable cause."[26] The Court takes each argument in turn.

### A. *Franks* claim

Under the Supreme Court's decision in *Franks v. Delaware*, a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause. 438 U.S. 154, 155–56 (1978). To evaluate whether purported falsehoods in a probable cause affidavit warrant suppression, courts require a defendant to show that (1) allegations in a supporting affidavit were deliberate falsehoods or made with reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause. *Mays*, 466 F.3d at 343 (citations and quotations omitted). To be entitled to a *Franks* evidentiary hearing, a defendant must "make a sufficient preliminary showing" as to the first prong. *See United States v. Kendrick*, 980 F.3d 432, 439–40 (5th Cir. 2020) (quoting *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017)).

Defendants fail to make the requisite showing here. The Court is not persuaded that the affidavit contains falsehoods, much less falsehoods made deliberately or recklessly. Taking each alleged falsehood in turn, Defendants first claim that Detective Herman's affidavit failed to "inform the magistrate that

---

[26] *Id.*

perpetrator's gray sweatshirt was devoid of any 'distinctive markings on the cuff.'"[27] That is incorrect. The affidavit explicitly states that "the sweatshirt worn by the perpetrator of the robbery [contained] distinctive markings on the cuff."[28] And in fact, the surveillance video of the robbery shows the perpetrator wearing a gray sweatshirt with white cuffs—similar to a sweatshirt hanging in the background of a photo of Downing seized from the perpetrator's cell phone.[29]

Second, Defendants claim that the affidavit was false because it suggested that the perpetrator's car was distinctive, yet "Honda Accords are one of the most common vehicles on the road."[30] On the contrary, the affidavit does not claim or even suggest that the Honda Accord at the robbery scene was "distinctive." The affidavit merely notes that the perpetrator's car matched the Honda Accord belonging to Downing's girlfriend, Lewis.[31] An issuing judge may draw "reasonable inferences" from the material supplied to him, *see Gates*, 462 U.S. at 240, and here it would have been reasonable for the judge to infer that the reference to "match[ing]" Honda Accords meant that the cars matched as to make, model, and color—certainly a relevant consideration in the judge's probable cause determination. Even so, Defendants fail to show how any alleged misstatement was deliberate or reckless.

Third, Defendants fault the affidavit for failing to inform the issuing judge that nothing was "distinctive" about the perpetrator's Timberland boots.[32] But the

---

[27] *Id.* at 4.
[28] ECF No. 72-1 at 3.
[29] ECF Nos. 72-3, 72-4.
[30] ECF No. 69-1 at 4.
[31] ECF No. 72-1 at 3.
[32] ECF No. 69-1 at 4.

9

affidavit does not contend or suggest that the boots were distinctive; rather, the affidavit states merely that a photo recovered from the cell phone showed Downing wearing the same boots as the perpetrator of the robbery.[33] Again, it was reasonable for the issuing judge to infer, based on the affidavit, that Downing owned the same type of shoes as the ones worn by the perpetrator of the robbery. A deliberate or reckless falsehood, this was not.

Finally, Defendants allege that "[n]o photos exist of Mr. Downing in the same 'ski mask type covering' as the perpetrator."[34] The government rejoins, and Defendants do not dispute, that officers recovered from the cell phone a photo showing Downing wearing a ski mask arguably similar to the one used by the perpetrator of the robbery.[35] Hence, Defendants fail to show the reference to the ski mask was a false or misleading statement.

Because Defendants have not made a "sufficient preliminary showing" of deliberate or reckless falsehoods, *Kendrick*, 980 F.3d at 439–40, this Court need not grant an evidentiary hearing on Defendants' *Franks* claims. And because Defendants have thus failed to show by a preponderance of the evidence that the search warrant affidavit contained a false statement made intentionally or with reckless disregard for the truth, Defendants' *Franks* argument is denied.

---

[33] ECF No. 72-1 at 3.
[34] ECF No. 69-1 at 4.
[35] ECF No. 72-1 at 3; ECF No. 72-5.

10

B.    *"Bare bones" affidavit claim*

The good-faith exception also does not apply when a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing *Leon*, 468 U.S. at 923). Such affidavits are often referred to as "bare bones" affidavits. *United States v. Pofahl*, 990 F.2d 1456, 1474 (5th Cir. 1993). "'Bare bones' affidavits contain wholly conclusory statements, lacking the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321.

Only when "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause" will suppression be warranted. *Leon*, 468 U.S. at 926. Under *Leon*, "the issue is not whether the issuing judge made a proper determination of probable cause, but whether the agents reasonably relied on the judge's determination in light of the information set forth in the affidavit." *United States v. Pigrum*, 922 F.2d 249, 252 (5th Cir. 1991). Thus, when a warrant application is supported by more than a "bare bones affidavit" containing wholly conclusory statements, it is appropriate for officers to rely on the warrant's validity. *Id*.

Defendants claim that the affidavit of 3916 Delachaise Street is "conclusory" and "bare bones."[36] It is not. The affidavit describes details of the robbery investigation, starting with the recovery of the cell phone along the flight path,

---

[36] ECF No. 69-1 at 9.

surveillance footage of the robbery revealing the perpetrator's distinctive clothing and flight vehicle, photos of Downing linking him to the phone and to the robbery, and other evidence pointing to Downing as the perpetrator. The affidavit furnished sufficient information supporting the fair probability that evidence relevant to the robbery would be found in the house. A determination whether probable cause has been established involves a "practical, common sense" evaluation of the "totality of the circumstances." *Gates*, 462 U.S. at 238. Here, the issuing judge made a practical, common-sense determination, given all the circumstances set forth in the affidavit, that probable cause existed to support the search. The Court finds no fault with that determination under the circumstances here.

## IV.  CONCLUSION

**IT IS ORDERED** that Defendants' motion[37] to suppress is **DENIED.**

**IT IS FURTHER ORDERED** that Downing's *pro se* motions[38] to suppress and to invoke his speedy trial rights are **DENIED.**

New Orleans, Louisiana, this 19th day of May, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[37] ECF No. 69.
[38] ECF Nos. 42, 43.